Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Meghan E. George (SBN 274525)
Thomas E. Wheeler (SBN 308789)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 Oxnard St. Suite 780,
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com
twheeler@toddflaw.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDY WARSHAUER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> DERMASET INC., and DOES 1-10, <br><br> Defendant(s). | Case No. <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR VIOLATIONS OF:** <br><br> 1. VIOLATIONS OF ELECTRONIC FUNDS TRANSFER ACT, 15 U.S.C. §1693 ET SEQ. <br> 2. VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, ET. SEQ <br> 3. VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT, CAL. CIV. C. § 1750, ET. SEQ. <br><br> **DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT
-1-

Plaintiff WENDY WARSHAUER ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following against Defendant DERMASET INC. upon information and belief based upon personal knowledge:

## INTRODUCTION

1. Plaintiff's Class Action Complaint is brought pursuant to the Electronic Funds Transfer Act, 15 U.S.C. 1693 et seq. ("EFTA") and the California Automatic Purchase Renewal Statute Cal. Bus. & Prof. Code § 17600, et seq. ("CAPRS").

2. Plaintiff, individually, and on behalf of all others similarly situated, brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant debiting Plaintiff's and also the putative Class members' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers from Plaintiff's and also the putative Class members' accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b). Additionally, Defendant failed to properly inform consumers of its autorenewal terms, thereby violating Cal. Bus. & Prof. Code § 17600 *et. seq*. Defendant fails to clearly and conspicuously disclose the terms of its autorenewal and additionally conditions its purchase on an illegal "negative option" as defined by 15 U.S.C. § 8403. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

3. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. 1331, because this action is brought pursuant to the EFTA, 15 U.S.C. 1693 *et seq*. The Court has supplemental jurisdiction over the remaining claims.

5. Jurisdiction of this Court arises pursuant to 15 U.S.C. 1693(m), which states that, "without regard to the amount in controversy, any action under this section may be brought in any United States district court."

6. Venue and personal jurisdiction in this District are proper pursuant to 28 U.S.C. 1391(b) because Plaintiff resides within this District and Defendant does or transact business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

7. Plaintiff, Wendy Warshauer ("Plaintiff"), is a natural person residing in Kern County in the state of California, and is a "consumer" as defined by 15 U.S.C. §1693a(6) and a "person" as defined by Cal. Bus. & Prof. Code § 17201.

8. At all relevant times herein, Defendant, DERMASET INC. ("Defendant"), was a Florida company engaged in the business of selling cosmetic products to consumers, including those in California such as Plaintiff.

9. The above named Defendant, and its subsidiaries and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

10.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTUAL ALLEGATIONS - EFTA

11.     Defendant is an online cosmetics company that sells cosmetics to consumers, such as Plaintiff, through its website dermaset.com.

12.     On January 21, 2020, Plaintiff visited Defendant's website where Defendant was advertising a 30-Day Trial of its product for $4.95.  The following is a picture of the advertisement:



13. After clicking on the "Try for 30 Days," below the statements "Free for 30-Days," "2 month supply," and "Pay Only Shipping & Handling," Plaintiff was presented with a form that stated "Introductory offer pay S/H" and "Where should we send your 30-day trial?" plus a form collecting Plaintiff's information and a clickable button that stated "Rush my Order!"

14. Below this form, in smaller text, where hyperlinks to a "Privacy Policy" and "Offer Terms." The "Rush my Order!" button did not require acceptance of any privacy policy or offer terms to complete the transaction.

15. Further, in yet even smaller text below the "Privacy Policy" and "Offer Term" links, which were, again, below a large colorful advertisement above and a larger form above, Defendant stated "Pay $4.95 S&P, today w/30-Day Trial. Call within 30 days & return to avoid monthly payments. Your card will be charged $179.00 day 30 after trial order. New tube sent every 60 days + $4.95 S&P at discounted $139.00. Call anytime to cancel future shipments."

16. On January 21, 2020, following the large advertisement and entering the information into the form box which failed to require acceptance of any offer terms, Plaintiff was charged on her debit card for the $4.95 for shipping and handling and sent the 2 oz "free trial" of cream.

17. Thereafter, on February 18, 2020, Defendant automatically withdraw from Plaintiff's debit card $179.00 as part of a recurring transaction.

18. Defendant did not send any correspondence to Plaintiff confirming the written terms of the auto-withdrawal or further explanation.

19. Plaintiff was surprised by this withdrawal and issued a charge back through her bank account.

20. Thereafter, Defendant began seeking collection of $259 through letters and emails.

21. Defendant's "free for 30 days trial" offer is what is known as a

negative option by the FTC, which is defined as "an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 CFR § 310.2.

22. Pursuant to 15 U.S. Code § 8403, it is unlawful to charge or attempt to charge any consumer for any goods or services sold in a transaction effected on the Internet through a negative option feature unless the "text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information," "obtains a consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction;" and "provides simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account."

23. Defendant's negative option sales scheme failed to satisfy all three prongs, any of which is fatal and unlawful. The only text that disclosed any material terms of the transaction was in significantly smaller text below the form obtaining the consumer's billing information—and after the transmission button. Accordingly, Defendant failed to obtain a consumer's express informed consent to make such charges. Further, while Defendant accepted transactions through the Internet, Defendant required cancellation to occur telephonically, which is not a simple mechanism.

24. Because Defendant failed to conspicuously disclose all material terms, it also failed to obtain Plaintiff's express informed consent for the recurring electronic fund transfers it thereafter made.

25. Further, Defendant did not provide to Plaintiff, nor did Plaintiff execute, any written or electronic writing memorializing or authorizing these recurring or automatic payments.

26. Plaintiff alleges such activity to be in violation of the Electronic Funds Transfer Act, 15 U.S.C. 1693 et seq. ("EFTA"), and its surrounding regulations, including, but not limited to, 12 C.F.R. §§1005.7, 1005.8, and 1005.9.

27. Plaintiff alleges such activity to be in violation of California's Automatic Purchase Renewal Statute Cal. Bus. & Prof. Code § 17600, et seq. ("CAPRS"), and its surrounding regulations.

28. At all times relevant, Defendant made and continues to make automatic renewal offers and continuous service offers, as those terms are defined by Cal. Bus. & Prof. Code § 17600, et seq. ("California's Automatic Purchase Renewal Statute") to Plaintiff and other consumers similarly situated.

29. At the time Plaintiff purchased the services, Defendant failed to present Defendant's automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner, as defined by California's Automatic Purchase Renewal Statute, before the subscription or purchasing agreement was fulfilled, and in visual or temporal proximity to Defendant's request for consent to the offer.

30. At the time Plaintiff purchased the services, Defendant charged Plaintiff for an automatic renewal offer without first obtaining Plaintiff's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms.

31. Further, Defendant never provided Plaintiff with information regarding how to cancel in a manner that was capable of being retained by Plaintiff.

32. On information and belief, Plaintiff alleges that Defendant's policy and practice is to engage in illegal and deceptive negative option sales to unfairly surprise consumers with large recurring transactions as part of a "free trial" scam.

33. At the time Plaintiff purchased Defendant's "free trial," Plaintiff was subjected to Defendant's unlawful policies and/or practices, as set forth herein, in

violation of Cal. Bus. & Prof. Code § 17600, et seq.

34. The material circumstances surrounding this experience by Plaintiff were the same, or nearly the same, as the other class members Plaintiff proposes to represent, and Plaintiff and all putative class members were required to pay, and did pay, money for the services marketed and sold by Defendant.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action on behalf of herself and all others similarly situated, as a member of two proposed classes (jointly "The Classes"). The first Class (hereafter "The EFTA Class") defined as follows:

> All persons in the United States whose bank accounts were debited on a reoccurring basis by Defendant without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint.

36. The second Class (hereafter "the CAPRS Class") is defined as follows:

> All persons in California whose bank accounts were debited on a reoccurring basis by Defendant without Defendant providing clear and conspicuous notice of the recurring charges, including information on how to cancel Defendant's services within the four years prior to the filing of this Complaint.

37. Plaintiff represents, and is a member of The EFTA Class, consisting of all persons within the United States whose bank account was debited on a recurring basis by Defendant without Defendant obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint.

38. Plaintiff represents, and is a member of The CAPRS Class, consisting of all persons in California whose bank accounts were debited on a reoccurring

basis by Defendant without Defendant providing clear and conspicuous notice of the charges, including information on how to cancel Defendant's services within the four years prior to the filing of this Complaint.

39. Defendant, its employees and agents are excluded from The Classes. Plaintiff does not know the number of members in The Classes, but believe the Classes members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

40. The Classes are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of The Classes members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that The Classes includes thousands of members. Plaintiff alleges that The Classes members may be ascertained by the records maintained by Defendant.

41. This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Classes are so numerous that joinder of the Classes members is impractical and the disposition of their claims in the class action will provide substantial benefits both to the parties and to the Court.

42. There are questions of law and fact common to the EFTA Class affecting the parties to be represented. The questions of law and fact to the EFTA Class predominate over questions which may affect individual EFTA Class members and include, but are not necessarily limited to, the following:

    a. The members of the Class were not provided with, nor did they execute, written agreements memorializing the automatic or recurring electronic payments.

    b. Defendant did not request, nor did it provide, Class members with written agreements memorializing the automatic or recurring electronic payments.

      c. The members of the Class did not provide either a written ("wet") or otherwise electronic signature authorizing the automatic or recurring electronic payments.

      d. Despite not providing written or electronic authorization for payments to be drawn from their accounts, Defendant took unauthorized payments from Class members' accounts.

43. There are questions of law and fact common to the CAPRS Class affecting the parties to be represented. The questions of law and fact to the CAPRS Class predominate over questions which may affect individual CAPRS Class members and include, but are not necessarily limited to, the following:

      a. Whether Defendant failed to clearly and conspicuously disclose the terms of its auto-renewal charges prior to making such charges to Class members' cards;

      b. Whether Defendant failed to obtain informed express consent for such charges;

      c. Whether Defendant filed to provide a simple method by which Class members could cancel their auto-withdrawals; and

      d. Whether Defendant failed to provide information to Plaintiff and Class Members regarding how to cancel in a manner that is capable of being retained by the consumer.

44. As someone whose bank account was debited on a reoccurring basis by Defendant without Defendant obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers, Plaintiff is asserting claims that are typical of The Classes.

45. Plaintiff will fairly and adequately protect the interests of the members of The Classes. Plaintiff has retained attorneys experienced in the prosecution of class actions.

**CLASS ACTION COMPLAINT**
-10-

46. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Classes members is impracticable. Even if every Classes member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

47. The prosecution of separate actions by individual Classes members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Classes members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Classes members to protect their interests.

48. Defendant has acted or refused to act in respects generally applicable to The Classes, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

## COUNT I:
## VIOLATION OF ELECTRONIC FUNDS TRANSFER ACT
## ON BEHALF OF THE EFTA CLASS

49. Plaintiff reincorporates by reference all of the preceding paragraphs.

50. Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

51. Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

52. Section 205.l0(b) of Regulation E, 12 C.F.R. § 205.l0(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

53. Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id.* at ¶10(b), comment 5. The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id.* at ¶10(b), comment 6.

54. Defendant debited Plaintiff's and also the putative Class members' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers for the rates charged from Plaintiff's and also the putative Class members' accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

55. Defendant has debited Plaintiff's and also the putative Class members' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by Plaintiff or the putative Class members for preauthorized electronic fund transfers, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

**CLASS ACTION COMPLAINT**

# COUNT II:
## VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200 INDIVIDUALLY AND ON BEHALF OF THE CAPRS CLASS

56. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

57. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

### UNFAIR

58. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

59. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

60. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the CAPRS Class. Plaintiff and members of the Class have suffered injury in fact due to Defendant's charging exorbitant auto-renewal charges without clearly and conspicuously disclosing such charges or obtaining consent. Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the CAPRS Class.

61. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendant converted large sums of money from Plaintiff and CAPRS Class members without clear and conspicuous notice or obtaining express informed consent. This systematic scheme is tantamount to theft. Thus, the injury suffered by Plaintiff and the members of the CAPRS Class is not outweighed by any countervailing benefits to consumers.

62. Finally, the injury suffered by Plaintiff and members of the CAPRS Class is not an injury that these consumers could reasonably have avoided. Defendant misappropriated funds from Plaintiff and other consumers, and these consumers suffered injury in fact due to Defendant's unexpected autowithdrawals. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the CAPRS Class members. Therefore, the injury suffered by Plaintiff and members of the CAPRS Class is not an injury which these consumers could reasonably have avoided.

63. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

## FRAUDULENT

64. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

65. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

66. Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Defendant had a duty to clearly and conspicuously disclose its automatic renewal terms, failed to do so, and misappropriated significant sums of money from Plaintiff and CAPRS Class members, who reasonably relied on Defendant's advertising practices which emphasized the "free trial" nature of the transaction, causing considerable actual damages.

67. Plaintiff's reliance is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

68. Defendant's practices is an unfair, unlawful and fraudulent bait and switch scheme.

69. Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

## UNLAWFUL

70. California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

71. As explained above, Defendant deceived Plaintiff and other Class Members by deducting unauthorized sums from their accounts under a negative option scheme.

72. As explained above, such conduct constitutes an unlawful act under Cal. Bus. & Prof. Code § 17600, et seq., 15 U.S. Code § 8403, and EFTA.

73. Defendant's acts are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 et seq..

74. Defendant's conduct caused and continues to cause economic harm to Plaintiff and CAPRS Class Members.

## COUNT III:
## VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT, CAL. CIV. C. § 1750 ET. SEQ.
### INDIVIDUALLY AND ON BEHALF OF THE CAPRS CLASS

75. Plaintiff incorporates by reference each allegation set forth above herein.

76. Defendant's actions as detailed above constitute a violation of the Consumer Legal Remedies Act, Cal. Civ. C. § 1750 et. seq. to the extent that Defendant violates the following provisions of the CLRA:

   a. Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve; *Cal. Civ. C. § 1770(a)(14)* and

   b. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not. *Cal. Civ. C. § 1770(a)(16)*.

77. Plaintiff brings these claims for injunctive relief only pursuant to Cal. Civ. C. § 1782(d), though reserves the right to amend without leave of Court as provided for in this section after compliance with Cal. Civ. C. § 1782(a) or (b).

78. Plaintiff has filed the required venue affidavit as an attachment to this Complaint.

## TRIAL BY JURY

79. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ANN FOX, individually, and on behalf of all others similarly situated, respectfully requests judgment be entered against Defendant, for the following:

    a. That this action be certified as a class action on behalf of The Classes and Plaintiff be appointed as the representative of The Classes;

    b. Statutory damages of $1,000.00, per Class Member, pursuant to the Electronic Fund Transfer Act, §916(a)(2)(A);

    c. Actual damages;

    d. Restitution of the funds improperly obtained by Defendant;

    e. Any and all statutory enhanced damages;

    f. All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

    g. For equitable and injunctive and pursuant to California Business and Professions Code § 17203 and Cal. Civ. C. § 1780 et. al.;

    h. For prejudgment interest at the legal rate; and

    i. Any other relief this Honorable Court deems appropriate.

Respectfully submitted this 11th Day of February, 2021.

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By: <u>/s/ Todd M. Friedman</u>
Todd M. Friedman
Law Offices of Todd M. Friedman
Attorney for Plaintiff